```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA

DUSTIN LEE TIPTON,                 )
                                   )
              Plaintiff,           )
                                   )
                                   )   Case No. CIV-20-359-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
              Defendant.           )
```

## OPINION AND ORDER

Plaintiff Dustin Lee Tipton (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 33 years old at the time of the ALJ's decision. He has at least a high school education and past work as a cashier. He alleges an inability to work beginning on March 17, 2017, due to limitations resulting from post-traumatic stress disorder ("PTSD"), depression, and anxiety.

### Procedural History

On January 17, 2019, Claimant filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. His application was denied initially and upon reconsideration. On April 3, 2020, ALJ Christopher Hunt conducted an administrative hearing by telephone from Tulsa, Oklahoma, during which Claimant testified.

On April 10, 2020, ALJ Hunt entered an unfavorable decision. Claimant requested review by the Appeals Council, and on August 10, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with additional limitations.

### Errors Alleged for Review

Claimant alleges that the ALJ committed error by (1) failing to follow the required legal standards resulting in his RFC assessment and step-five findings being unsupported by substantial evidence, (2) failing to properly consider the medical evidence which prevented a proper Listing analysis, and (3) failing to properly assess the consistency of Claimant's complaints with the record evidence.

### Consideration of Mental Health Limitations

In his decision, the ALJ found Claimant suffered from severe impairments of PTSD, major depressive disorder, and generalized anxiety disorder. (Tr. 12). He determined Claimant could perform a full range of work at all exertional levels with additional

4

nonexertional limitations. Claimant was limited to jobs with a reasoning level of three (as defined by the Dictionary of Occupational Titles ("DOT")), could have occasional contact with co-workers and supervisors, could have no contact with the general public, and could work with things instead of people. (Tr. 15).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of small product assembler, machine operator, and electrical worker, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 19-20). As a result, the ALJ concluded Claimant has not been under a disability since January 17, 2019, the date the application was filed. (Tr. 20).

Claimant makes several arguments regarding the ALJ's assessment of his mental RFC. He first argues that the ALJ failed to account for the limitations found by the agency psychologists, even though he claimed to find their opinions persuasive. He contends that the agency psychologists found him markedly limited in his ability to carry out and understand detailed instructions and determined he was capable of only understanding, recalling, and performing simple, repetitive tasks. Claimant asserts that the ALJ determined he could perform jobs with a reasoning level of three which is counter to the agency psychologists' opinions.

The ALJ specifically discussed the opinions of the agency psychological consultants. He noted that on April 23, 2019, Sally

5

Varghese, M.D., determined Claimant had the mental RFC to "perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis but cannot relate to the public[.]" (Tr. 18, 58-60). He also discussed that on June 26, 2019, Lisa Swisher, Ph.D., determined Claimant had "the ability to understand, recall and perform simple repetitive tasks." She determined Claimant could "focus for two-hour periods with routine breaks, and maintain pace and persist for eight-hour workday and 40-hour workweek despite psychological symptoms." Claimant could "interact with coworkers and supervisors to learn tasks and accept criticism but [could not] tolerate frequent interaction and need for frequent cooperation to complete work tasks." She finally noted that Claimant was "unable to interact appropriately or tolerate contact with the public[, but] [h]e can adapt to work setting and some changes in the work setting[.]" (Tr. 18, 75-77, 370). The ALJ found their assessments "persuasive, Dr. Swisher's . . . more than Dr. Varghese['s] . . . because their assessments are consistent with treatment notes from Behavioral Health Services, which showed with treatment and medication compliance the claimant's symptoms are controllable allowing him to care for two elderly neighbors daily." (Tr. 18).

Claimant contends that had the ALJ found the agency mental health opinions persuasive, he would have reflected the correct limitations in the hypothetical question he presented to the VE.

Claimant maintains that a reasoning level of three is counter to the agency opinions limiting him to performing only simple, repetitive tasks. He instead argues that he is limited to performing jobs with a reasoning level of one.

Defendant appears to concede that the ALJ failed to properly account for the agency limitations in the RFC. Defendant, however, argues that the ALJ's failure to do so is harmless because the jobs the VE determined Claimant could perform, and relied upon by the ALJ, only required a reasoning level of two, which is consistent with the performance of simple and repetitive tasks. At the hearing, the VE testified Claimant could perform the jobs of small products assembler, machine operator, and electrical worker, all jobs with a reasoning level of two. (Tr. 48-50).

In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit found that jobs with a reasoning level of three were inconsistent with an RFC that limited the claimant to "simple and routine work tasks." It determined, however, that "level-two reasoning appears more consistent" with such an RFC. *Id.*; *see also Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (rejecting the argument that "simple, repetitive and routine work" should be construed as a limitation to jobs with a reasoning-level of one). This Court and others have routinely determined that level-two reasoning is consistent with simple tasks. *See, e.g., Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. Mar. 13,

7

2017)(finding "simple work" consistent with reasoning level of two); *Olsen v. Saul*, 2019 WL 4318486, at *4 (E.D. Okla. Sept. 12, 2019)(finding "simple tasks" consistent with reasoning level of two); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla., May 6, 2016) (finding "the ALJ properly relied on the jobs identified by the VE with a reasoning level of two" where the RFC limited the claimant to "simple, routine, repetitive instructions.").

A court may determine an error is harmless "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Here, the jobs the VE testified Claimant could perform, which were relied upon by the ALJ, required a reasoning level of two, which is consistent with a limitation for the performance of simple and repetitive tasks. (Tr. 19-20, 48-51).[2] The Court therefore finds that the error by the ALJ was harmless in this instance and the step-five determination is supported by substantial evidence.

Claimant next argues that the ALJ failed to properly consider the opinion of his counselor Catherine Mason, LPC/LADC. Ms. Mason

---

[2] Claimant asserts in his reply brief that the jobs of small product assembler and electrical worker both require more than occasional interaction with co-workers and supervisors. He acknowledges that the job of machine operator remains, instead challenging whether the job exists in the national economy in significant numbers. The VE testified

treated Claimant at CREOKS Behavioral Health Services. The ALJ discussed her Client Assessment Records ("CAR") of Claimant in the decision. He specifically addressed her treatment notes from August of 2018 (Tr. 16, 288-99), her identical treatment notes from April of 2019 (Tr. 17, 349-56), and treatment notes from October of 2019 (Tr. 17, 378-91). The ALJ was not required to determine the persuasiveness of Ms. Mason's CAR findings. The CAR findings do not include specific functional limitations and do not constitute a medical opinion. *See Jennifer V. v. Kijakazi*, 2022 WL 852867, at *7 (N.D. Okla., Mar. 22, 2022) ("Under the applicable regulations, CAR evidence is not a medical opinion. Medical opinions are defined as 'statement[s] from a medical source about what [the claimant] can still do despite [their] impairment(s)[.]' 20 C.F.R. § 416.913(a)(2). Rather, CAR scores are considered '[o]ther medical evidence,' i.e., 'judgments about the nature and severity' of a patient's impairments. 20 C.F.R. § 416.913(a)(3). As such, the ALJ was not required to articulate the

---

that there were 45,000 machine operator jobs in the national economy. (Tr. 19, 50). The ALJ could therefore rely upon the job of machine operator to find Claimant not disabled at step five. *See Rogers v. Astrue*, 312 Fed. Appx. 138, 141 (10th Cir. 2009) (testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability); *see also Nunn v. Apfel*, 1998 WL 321189, at *2 (10th Cir. 1998) ("Even assuming that claimant's objections to some of the jobs identified by the vocational expert are well taken," if claimant can perform some of the jobs identified, the ALJ can rely on those jobs to find claimant not disabled).

9

persuasiveness of this evidence. 20 C.F.R. § 416.920c(b)."). The ALJ clearly considered Ms. Mason's treatment of Claimant, and under the regulations, that was all he was required to do.

Claimant further asserts that the ALJ failed to develop the record because it does not include a consultative examination of Claimant by a psychologist or psychiatrist. A review of the record shows that it contained sufficient information for the ALJ to make a mental RFC determination, and Claimant's counsel did not request any additional development of the record by the ALJ. *See Cowan v. Astrue*, 552 F.3d 1182, 1187-88 (10th Cir. 2008) (noting ALJ's responsibility for development of the record and that the duty is satisfied when the record contains sufficient information to make a disability determination and there was no request by counsel for further development), quoting *Hawkins*, 113 F.3d at 1167-68 ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.") (citation omitted). Here, there was no request by counsel for a consultative psychological or psychiatric examination of Claimant. (Tr. 33-52). There was no error by the ALJ for not ordering a mental consultative examination of Claimant.

**Consideration of Listing 12.15**

Claimant also argues that because the ALJ failed to properly consider the evidence, his step-three determination that Claimant's mental impairments do not meet or medically equal Listing 12.15 was made in error.

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Claimant bears the burden of showing that her impairments meet or equal a listed impairment. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). "[F]or a claimant to show that [her] impairment matches a [L]isting, it must meet *all* the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990) (emphasis in original).

To meet Listing 12.15 (trauma and stessor related disorders), a claimant must satisfy the "paragraph A" medical documentation criteria and either the "paragraph B" functional criteria or the "paragraph C" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00A(2), 12.15. Claimant specifically asserts that he meets the documentation criteria of "paragraph A" and the functional

criteria of "paragraph B."[3]  To satisfy the functional criteria of "paragraph B," a claimant must have an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.*

The ALJ specifically considered the medical documentation criteria of "paragraph A" and the functional criteria of "paragraph B" for Listing 12.15. He determined the requirements were not met. (Tr. 13-14). Regarding the "paragraph B" criteria, he determined Claimant had moderate limitation in three of the functional areas – understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace. He concluded Claimant had a mild limitation for adapting or managing herself. In reaching his conclusions, the ALJ relied upon Claimant's demeanor and testimony at the administrative hearing and treatment notes from Behavioral Health Services. (Tr. 14). He determined Claimant's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of [L]isting[] . . . 12.15." *Id.*

Even assuming Claimant can satisfy the documentation criteria of "paragraph A," he cannot successfully challenge the ALJ's

---

[3]   Because Claimant does not challenge the ALJ's conclusion regarding the "paragraph C" criteria, this Court will not address it.

assessment of the "paragraph B" criteria. The ALJ's determination that Claimant did not meet or medically equal a listing is supported by the record. The decision demonstrates that the ALJ considered the effects of Claimant's PTSD, depression, and anxiety, including evidence from Behavioral Health Services and Ms. Mason when assessing Claimant's RFC. (Tr. 15-18). Through his arguments, Claimant requests that the Court reweigh the evidence, which it cannot do. The Court finds no error in the ALJ's consideration of Listing 12.15.

### Evaluation of Symptoms

Claimant further takes issue with the ALJ's evaluation of his reported symptoms based upon the other errors in the decision. He also contends that the ALJ failed to consider the appropriate factors to support his consistency determination.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can

13

assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of the evaluation of Claimant's subjective symptoms, the ALJ noted the two-step process set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 416.929. (Tr. 15). He specifically considered Claimant's hearing testimony and two adult-function reports – one completed by Claimant, and another completed on Claimant's behalf. (Tr. 15-16, 204-16, 241-48). He discussed the objective mental health findings from Claimant's treatment through Behavioral Health Services and Claimant's subjective statements (Tr. 16-17). The ALJ determined Claimant's statements about his mental symptoms were "not entirely consistent" with the medical evidence or the other evidence in the record. (Tr. 16). He concluded that "[t]he impact of his impairments do not fully compromise his ability to function independently, appropriately and effectively on a sustained basis[,]" and the RFC "is supported by mental health treatment notes and the [C]laimant's statements." (Tr. 18). This Court finds no error with the ALJ's evaluation of Claimant's subjective complaints.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 15th day of March, 2023.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE